## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## BANKRUPTCY DIVISION
### DIVISION OF ST. THOMAS/ST. JOHN

| | |
|---|---|
| In re: | Chapter 11 |
| IN RE: INNOVATIVE COMMUNICATION CORPORATION, | Case No. 07-30012 (MFW) |
| Debtor. | |
| JAMES P. CARROLL, Liquidation Trustee of the Liquidation Trust for the Bankruptcy Estates of Innovative Communications Co., LLC, Emerging Communications, Inc., and Innovative Communication Corp. | |
| Plaintiff, | |
| v. | |
| ROBERT F. CRAIG P.C., | Adv. P. No. 09-03070 (MFW) |
| JOHN P. RAYNOR, | Adv. P. No. 09-03012 (MFW) |
| PETER WEISMAN and PETER WEISMAN & ASSOCIATES, | Adv. P. No. 09-03089 (MFW) |
| PROSSER & CAMPBELL, P.C. | Adv. P. No. 09-03009 (MFW) |
| RAYNOR, RENSCH & PFEIFFER | Adv. P. No. 09-03010 (MFW) |
| BANCO POPULAR de PUERTO RICO | Adv. P. No. 09-03090 (MFW) |
| Defendants. | |

## MEMORANDUM OPINION[1]

Before the Court are the Motions of James P. Carroll, the
Trustee of the Liquidation Trust for the bankruptcy estates of
Innovative Communications Co., LLC ("ICC-LLC"), Emerging
Communications, Inc. ("Emerging"), and Innovative Communication
Corp. ("New ICC") (collectively the "Debtors") and the responses

---

[1] This Memorandum Opinion constitutes the findings of fact
and conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

and cross Motions of the various Defendants in the above-
captioned adversaries for partial summary judgment on the issue
of whether the Trustee's complaints against the Defendants are
time-barred by the applicable statute of limitations.  For the
reasons set forth below, the Court concludes that the applicable
statute of limitations does not bar the Trustee's Complaints and
accordingly will grant the Motion of the Trustee for Partial
Summary Judgment on this point.

I.    BACKGROUND

     On February 10, 2006, involuntary chapter 11 cases were
filed against ICC-LLC, Emerging, and Jeffrey J. Prosser.[2]  On
July 31, 2006, ICC-LLC, Emerging, and Prosser filed voluntary
petitions for relief under chapter 11 of the Bankruptcy Code.  On
March 15, 2007, Stan Springel was appointed the chapter 11
Trustee of ICC-LLC and Emerging.  On October 3, 2007, the Prosser
case was converted to chapter 7 and James P. Carroll was
ultimately appointed the chapter 7 Trustee.

     On July 5, 2007, an involuntary chapter 11 case was filed
against New ICC and on September 21, 2007, an order for relief
under chapter 11 was entered.  On October 4, 2007, Stan Springel
was appointed the chapter 11 Trustee of New ICC.

--------

     [2]  Prosser was the chairman of the board, CEO, and president
of ICC-LLC.

2

ICC-LLC is a holding company that owns approximately 51% of Emerging, which owns 100% of New ICC. New ICC was a holding company which owned various operating subsidiaries that provided telephone, newspaper, and other services to the citizens of the United States Virgin Islands, British Virgin Islands, surrounding Caribbean locations, and portions of France.

In 2009, the chapter 11 Trustee commenced the above adversary proceedings by filing complaints against the Defendants to recover various pre-petition transfers (the "Transfers") as preferential under section 547 and as actually or constructively fraudulent pursuant to section 548, section 544, and Virgin Islands law.

On October 31, 2012, an Order was entered confirming the joint liquidating plan of ICC-LLC, Emerging, and New ICC. Pursuant to that plan, all causes of action of the estates were vested in a liquidating trust and Carroll was approved as the Liquidation Trustee. The Liquidation Trustee succeeded the chapter 11 Trustee as Plaintiff in these actions.

On August 29, 2013, Banco Popular de Puerto Rico (the "Bank") filed a motion for partial summary judgment contending that the statute of limitations bars the recovery under section 544 and Virgin Islands law of any constructively fraudulent Transfers that occurred more than two years before the petition date. The Trustee responded to the Motion and filed his own

3

motion for partial summary judgment contending that the Virgin
Islands statute of limitations is tolled until the Transfers
could reasonably have been discovered by creditors (the
"Discovery Rule").  The Trustee contends that creditors could not
have reasonably discovered the Transfers in these adversaries
before the petition date.

Because the other Defendants raised similar defenses and
because the applicability of the Discovery Rule is common to all
these adversaries, the Court entered a scheduling order providing
for discovery and the timing of the filing of motions and briefs
on this issue.  In accordance with that scheduling order, the
Trustee filed an amended motion for partial summary judgment on
the Discovery Rule issue in each of the other adversaries in
early January 2014.  The other Defendants filed their responses
and cross Motions, to which the Trustee replied.  Oral argument
was held on February 11, 2014, and the matter was held under
advisement.


II.  <u>JURISDICTION</u>

The Court has subject matter jurisdiction over these
adversary proceedings.  28 U.S.C. §§ 1334(b) & 157(b)(1).  The
count based on section 544 and Virgin Islands law is a "state
law" claim which is not a core matter.  28 U.S.C. § 157(b)(2) &
(c)(1).  Therefore, while the Court has jurisdiction to hear the

adversary proceedings, it may not enter a final judgment on the
merits absent consent but must, instead, present proposed
findings of fact and conclusions of law to the district court
which will enter any final judgment.  Id. at § 157(c)(1).

Nonetheless, the Court does have the power to enter a final
order on pre-trial issues.  See, e.g., Boyd v. King Par, LLC,
Case No. 11-CV-1106, 2011 WL 5509873, at *5 (W.D. Mich. Nov. 10,
2011) ("[U]ncertainty regarding the bankruptcy court's ability to
enter a final judgment . . . does not deprive the bankruptcy
court of the power to entertain all pretrial proceedings,
including summary judgment motions."); In re Trinsum Grp., Inc.,
467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After Stern v.
Marshall, the ability of bankruptcy judges to enter interlocutory
orders in proceedings . . . has been reaffirmed . . . ."); Luna &
Glushon v. Tri-Valley Corp. (In re Tri-Valley Corp.), Adv. No.
12-50989, 2013 WL 1910287, at *1 (Bankr. D. Del. May 1, 2013)
(concluding that bankruptcy court had authority to decide motion
to dismiss even if the court lacked authority to enter final
order on the merits).

III. DISCUSSION

   A.   Standard of Review

The Court should grant a motion for summary judgment "if the
pleadings, the discovery and disclosure materials on file, and

5

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[3]

In considering a motion for summary judgment under Rule 56, the Court must view the inferences from the record in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hollinger v. Magner Mining Equip. Co., 667 F.2d 402, 405 (3d Cir. 1981).  If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, the Court must enter judgment in the movant's favor.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990).

The movant bears the burden of establishing that no genuine issue of material fact exits.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1985); Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Grp., Inc.), 377 B.R. 471, 475 (Bankr. D. Del. 2007).  A fact is material when it could "affect the outcome of the suit." Anderson, 477 U.S. at 248.

---

[3]  Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings.

Once the moving party has established its prima facie case, the party opposing summary judgment must go beyond the pleadings and point to specific facts showing there is a genuine issue of fact for trial. See, e.g., id. at 252; Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000); Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 164 (3d Cir. 1999). If the moving party offers only speculation and conclusory allegations in support of its motion, its burden of proof is not satisfied. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

B.    Constructive Fraud Claim

The Trustee seeks to avoid certain Transfers which he alleges were constructively fraudulent pursuant to section 544 and the applicable laws of the United States Virgin Islands. Section 544 authorizes the trustee to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable [non-bankruptcy] law by a creditor holding an unsecured claim that is allowable under section 502 of this title." 11 U.S.C. § 544(b)(1).

1.    Existence of eligible creditor

In order to succeed on his claims against the Defendants under section 544, the Trustee must show the existence of an actual creditor with an allowable unsecured claim who, under applicable non-bankruptcy law, could avoid the Transfer. The

7

Trustee contends that Comstar, Inc., is just such a creditor.

### a.    Creditor as of petition date

The Defendants contend that Comstar is not an eligible creditor for purposes of section 544(b) because it did not hold a claim against New ICC as of the petition date.  It only became a creditor during the gap period, between the filing of the involuntary petition and the entry of the order for relief.  The Defendants argue that because property of the estate is fixed as of the petition date, the Trustee's right to pursue a claim under section 544 must also be fixed as of the petition date and cannot be expanded by the existence of an unsecured creditor whose claim arose after that date.  They quote language in cases that suggests that the eligible creditor must actually hold a claim on the petition date.  See, e.g., Cadle Co. v. Mims (In re Moore), 608 F.3d 253, 260 (5th Cir. 2010) ("If an actual, unsecured creditor can, on the date of the bankruptcy, reach property that the debtor has transferred to a third party, the trustee may use § 544(b) to step into the shoes of that creditor) (emphasis added) (internal quotations omitted); In re Consol. Indus. Corp., 397 F.3d 524, 526 (7th Cir. 2005) (under § 544, a bankruptcy trustee "has standing to pursue any causes of action a creditor could have pursued, provided that a creditor existing at the time the transfers were made still had a viable claim against the debtor at the time the bankruptcy petition is filed") (emphasis

8

added); In re PWS Holding Corp., 303 F.3d 308, 314 (3d Cir. 2002)
("upon commencement of a case under the Bankruptcy Code, a
trustee or debtor in possession 'may avoid any transfer of an
interest of the debtor in property or any obligation incurred by
the debtor that is voidable under applicable law by a creditor
holding an unsecured claim that is allowable' under the
Bankruptcy Code."); LTV Steel Co. v. Shalala (In re Chateaugay
Corp.), 53 F.3d 478, 497 (2d Cir. 1995) ("[A] valid bankruptcy
claim depends on . . . whether that right [to payment] arose
before the filing of the petition."); Acequia v. Clinton (In re
Acequia), 34 F.3d 800, 807 (9th Cir. 1994) ("the existence of a
section 544(b) cause of action 'depends upon whether . . . a
creditor existing at the time the transfers were made . . . still
had a viable claim against [the] debtor at the time the
bankruptcy petition was filed'"); Stalnaker v. DLC, Ltd. (In re
DLC, Ltd.), 295 B.R. 593, 605 (8th Cir. B.A.P. 2003) ("[W]e hold,
as have other courts analyzing this issue, that the trustee must
identify a creditor with an allowable unsecured claim who had an
allowable claim against the debtor on the date the bankruptcy
petition was filed.") (emphasis added).

In many of the cases cited by the Defendants the quotations
used in the parentheticals do not actually express the holdings
of those cases but instead are mere dicta.  See, e.g., Moore, 608
F.3d at 259 (holding that state law fraudulent transfer claim was

9

owned by estate which could sell or settle it); Consol. Indus.
Corp., 397 F.3d at 526 (holding that appeal of denial of
mandatory injunction to enforce settlement was mooted by entry
into new settlement); PWS Holding Corp., 303 F.3d at 314-15
(holding that debtor's release of fraudulent transfer claims in
plan barred unsecured creditor from pursuing them); Chateaugay
Corp., 53 F.3d at 497 (holding that debtor's obligation to
contribute to coal miner's health and benefit funds was not a
pre-petition claim); Acequia, 34 F.3d at 808 (holding that state
law action to avoid fraudulent transfers was not mooted by
payment in full of creditors under confirmed plan); DLC, Ltd.,
295 B.R. at 605 (holding that existence of creditors with
allowable claims as of petition date was sufficient to permit
trustee to pursue section 544 action even if claims were later
withdrawn or satisfied).

    Further, some of the quoted language in the cases supports
the conclusion that the creditor must only have an allowable
claim as of the petition date, not that the eligible creditor
must hold an actual claim on the petition date. See, e.g., PWS
Holding Corp., 303 F.3d at 314; DLC, Ltd., 295 B.R. at 605.

    Of the utmost importance, however, is that none of the cases
cited by the Defendants hold that a gap creditor is not an
eligible creditor. In fact, none of the parties cite, and the
Court has not found, any case directly on point determining

10

whether a gap creditor can serve as the eligible creditor under section 544.[4]

Therefore, the Court must look to the plain language of the statute to see whether a gap creditor is eligible. See, e.g., Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text . . . . It is well established that when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms."); United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) ("The task of resolving the dispute over the meaning of § 506(b) begins where all [statutory interpretation] inquiries must begin: with the language of the statute itself. In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"). See also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000).

---

[4] The Trustee cites the decision of Judge Fitzgerald in a companion adversary in these cases where Comstar was found to be an eligible creditor for purposes of section 544. However, the issue of whether, as a gap creditor, Comstar should not have been so recognized was not, in fact, litigated or decided in that case. See, e.g., Springel v. Prosser (In re Innovative Commc'n Corp.), Adv. No. 08-03004, 2011 WL 3439291, at *39 (Bankr. D.V.I. Aug. 5, 2011).

Section 544 states that the avoidance claim must be held "by a creditor holding an unsecured claim that is allowable under section 502 of this title." 11 U.S.C. § 544(b)(1). A gap creditor holds "an unsecured claim that is allowable under section 502 of this title" because its claim is allowable under section 502(f), which provides:

> In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(f).

Thus, under the plain language of the statute, the Court concludes that a gap creditor, whose claim is allowed as an unsecured claim under section 502(f), is eligible to serve as a creditor for purposes of section 544.

b. <u>Creditor at time of transfer</u>

Even if a gap creditor were eligible, however, the Defendants contend that Comstar is not eligible to serve as the applicable creditor for purposes of allowing the Trustee to bring an action under section 544 because the Trustee has presented no evidence that Comstar was a creditor at the time of the alleged transfers or was injured by them. Many courts have noted the need to prove that the creditor upon whom the trustee relies for

12

standing under section 544 must have been a creditor at both the petition date and the date of the fraudulent transfer.  See, e.g., Williams v. Marlar (In re Marlar), 252 B.R. 743, 755 (8th Cir. B.A.P. 2000) (noting that there was no dispute that creditors existed at time of transfer); Silverman v. Sound Around, Inc. (In re Allou Distribs., Inc.), 392 B.R. 24, 33 (Bankr. E.D.N.Y. 2008) (finding that creditor who held a different claim on the transfer date as it held on petition date was nonetheless an eligible creditor under section 544(b)); Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Grp., Inc.), 339 B.R. 570, 575-76 (Bankr. D. Del. 2006) (noting that Connecticut state law required there be a creditor who was also a creditor at time of the transfer); Pardo v. Avanti Corp. Health Sys., Inc. (In re APF Co.), 274 B.R. 634, 639 (Bankr. D. Del. 2001) (noting that section 544 requires that trustee prove the existence of creditor at time of transfer).

The Trustee responds that Comstar is an eligible creditor even if it did not hold a claim as of the date of the Transfers because, under Virgin Islands law, Comstar could still bring a claim to avoid the transfers.  The Virgin Islands version of the Uniform Fraudulent Conveyance Act (the "UFCA") provides that "[e]very conveyance made . . . without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability

13

to pay as they mature, is fraudulent as to both present and
future creditors." V.I. Code Ann. tit. 28, § 206 (2007)
(emphasis added). Thus, the Trustee contends that the mere fact
that Comstar became a creditor during the gap period (after the
transfers occurred) is sufficient to give the Trustee standing
under section 544(b) to bring these actions.

The Court agrees with the Trustee. Under the plain language
of the Virgin Islands statute, because Comstar held a claim at
some point after the Transfers to the Defendants, it is a
creditor who would have standing to sue to avoid those transfers.
See, e.g., Lamie, 540 U.S. at 534 (where a "statute's language is
plain, the sole function of the courts — at least where the
disposition required by the text is not absurd — is to enforce it
according to its terms."); Hartford Underwriters, 530 U.S. at 6
(same); Ron Pair Enters., 489 U.S. at 241 (same).

The Defendants also contend, however, that Comstar is not an
eligible creditor because it was paid in full by the Trustee on
November 30, 2012, and is no longer a creditor of any kind. See
Exs. 46, 47 & 48.

The Court concludes, however, that it is irrelevant that
Comstar was subsequently paid for its claim. So long as it was a
creditor who had an allowable claim as of the petition date, the
Trustee has standing under section 544. See, e.g., DLC, Ltd.,
295 B.R. at 605 (holding that a section 544 claim cannot be

14

defeated by the payment of eligible creditors).  <u>See also</u>

<u>Acequia</u>, 34 F.3d at 807-09 (trustee can sue to avoid transfers

under section 544 so long as there is an eligible creditor who

would have standing to avoid them, even though the amount of that

creditor's claim - or the total amount of all unsecured claims -

is less than the transfer); <u>Abramson v. Boedeker</u>, 379 F.2d 741,

748 n.16 (5th Cir. 1967) ("[I]f the transfer is avoidable at all

by any creditor, it is avoidable in full for all creditors

regardless of the dollar amount of the prevailing claim.").

   C.   <u>Statute of Limitations</u>

   The Defendants argue nonetheless that the Trustee's recovery

under section 544 is limited by the Virgin Islands two-year

statute of limitations for fraudulent conveyances.  They contend

that the two-year statute would preclude the recovery of any

Transfers which occurred more than two years before the Petition

Date.

   Virgin Islands law provides for a two year statute of

limitations for:

>    (A) An action for libel, slander, assault, battery,
>    seduction, false imprisonment, or for any injury to the
>    person or rights of another not arising on contract and
>    not herein especially enumerated, or to set aside a
>    sale of real property for non-payment of real property
>    taxes pursuant to Title 33, chapter 89, subchapter III
>    of this Code.

V.I. Code Ann. tit. 5, § 31(5) (2012).  This provision has been

held to apply to actions for common law fraud.  <u>See Montgomery v.</u>

Estate of Griffith, 49 V.I. 255 (2008).

      1.   Discovery Rule exception

     The Trustee responds that the Virgin Islands two year statute of limitations for fraud has an exception, the Discovery Rule, which allows him to bring an action within two years of when the fraud was, or reasonably could have been, discovered. In this case, the Trustee contends that the fraud could not have been discovered until the bankruptcy case was filed. Therefore, the Trustee contends that he had two years from the Petition Date to file his adversary proceedings.

     The Trustee relies upon the Discovery Rule as articulated in the Virgin Islands Code which states that "[i]n an action upon a . . . fraud . . ., the [statute of] limitation shall be deemed to commence only from . . . the discovery of the fraud . . . ." V.I. Code Ann. tit. 5, § 32(c) (2014).

> Under the Discovery Rule, the applicable statute of limitations will not begin to toll until "the plaintiff knew or should have known through the exercise of reasonable diligence sufficient critical facts to put him on notice that (1) he has been injured and (2) the actions or inactions of a particular party could have been a cause of that injury."

In re Innovative Commc'n Corp., Civ. A. No. 2012-51, 2013 WL 5432316, at *11 (D.V.I. Sept. 27, 2013) (quoting Harthman v. Texaco, Inc. (In re Tutu Wells Contamination Litig.), 909 F. Supp. 980, 986 (D.V.I. 1995)). See also Montgomery, 49 V.I. at 265 (holding that limitations period commences when a person

16

reasonably should have discovered the fraud).

    2.   Application to Uniform Fraudulent Conveyance Act

The Bank argues that the Virgin Islands Discovery Rule does not apply in this case, because the Trustee's claim is founded on the Virgin Islands version of the UFCA. V.I. Code Ann. tit. 28, § 171 et seq. (2014). In enacting the UFCA, the Virgin Islands legislature stated that it was to "be so interpreted and construed as to effectuate its general purpose to make uniform the law of those jurisdictions which enact it." V.I. Code Ann. tit. 28, § 212 (2014). The Bank argues that the application of the Discovery Rule here would destroy the uniformity of that act.

The Trustee responds that the UFCA as adopted by the Virgin Islands does not contain any statute of limitations provision and, therefore, it is necessary to apply the general statute of limitations which includes the codification of the Discovery Rule. Further, the Trustee notes that many jurisdictions which have adopted the UFCA have similarly applied their version of the Discovery Rule to claims under that act. See, e.g., KSC Recovery v. First Boston Corp. (In re Kaiser Merger Litig.), 168 B.R. 991, 1002 (D. Colo. 1994); Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC), 454 B.R. 317, 318 (Bankr. S.D.N.Y. 2011); Old Orchard Bank & Trust Co. v. Josefik (In re Josefik), 72 B.R. 393, 400 (Bankr. N.D. Ill. 1987).

17

The Court agrees with the Trustee.  Because the Virgin Islands version of the UFCA does not have any statute of limitations provision, the court must "follow the traditional practice of borrowing the most analogous statute of limitations from state law." Island Insteel Sys. v. Waters, 296 F.3d 200, 206 (3d Cir. 2002).  If the most analogous statute of limitations incorporates the Discovery Rule, that should be applied as well.

### 3.  Constructive Fraud

The Defendants contend nonetheless that the Virgin Islands Discovery Rule exception to the two-year statute of limitations is not applicable to constructive fraud claims but only to actual fraud claims.  They note that the statute of limitations is based on important policy considerations because "[t]he longer the delay of the plaintiff in the institution of his suit, the greater the likelihood that the evidence will be lost, memories blurred, or the witnesses become altogether unavailable." Dublin v. V.I. Tel. Corp., 15 V.I. 214, 232-33 (Terr. Ct. 1978).[5] Accordingly, they argue that any exceptions to the statute of limitations must be construed narrowly.

The Trustee responds that the Discovery Rule does apply to constructive as well as actual fraud claims.  He relies on cases

---

[5]  The Bank particularly notes that it does not keep credit card statements or other relevant records for the almost thirteen years that is covered by the Trustee's suit in this case and therefore is impeded in its ability to defend itself.

18

in other jurisdictions where the Discovery Rule has been applied to constructive fraud cases, as well as to actual fraud cases. See, e.g., Tysons Toyota, Inc. v. Globe Life Ins. Co., 45 F.3d 428, at *6 (4th Cir. 1994) (concluding that Virginia's Discovery Rule applied to a breach of fiduciary duty claim because it was considered constructive fraud); Glenn v. Bank of America, Civ. No. 10-1974, 2010 WL 3786171, at *2 (D.S.C. Sept. 22, 2010) (noting that the South Carolina statute expressly applied the Discovery Rule to constructive as well as actual fraud claims); Brunner v. Bawcom, Civ. No. 10-24, 2010 WL 3724436, at *10 (D. Mont. Sept. 15, 2010) (concluding that Discovery Rule applied to constructive and actual fraud without analysis).  The Trustee notes that the Virgin Islands statute is similar to the Virginia statute[6] at issue in Tysons Toyota and is unlike other states' statutes which expressly state that the Discovery Rule is not applicable to constructive fraud claims.  Cf. Janvey v. Suarez, Civ. No. 10-02581, 2013 WL 5663107, at *16 (N.D. Tex. Oct. 17, 2013) (citing Tex. Bus. & Com. Code Ann. § 24.010(a)(2)).

The Bank contends that the cases cited by the Trustee are not applicable and relies, instead, on the Third Circuit decision in Island Insteel to support its contention that the Discovery

---

[6]    The Virginia statute provides: "The cause of action . . . shall accrue . . . [i]n actions for fraud . . . when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered."  VA Code Ann. § 8.01-249.

Rule is not applicable to constructive fraud claims.  296 F.3d at

210.  In Island Insteel, the Third Circuit concluded that Lanham

Act claims for trade name infringement are similar to deceptive

trade practices claims and, therefore, subject to the two-year

statute of limitations under the Virgin Islands Code.  296 F.3d

at 213-14.  However, the Court held that the Discovery Rule was

not applicable because the claim was not similar to a common law

fraud which required an element of scienter.  Id.  The Bank

argues that the same is true of constructive fraud claims, which

need no scienter or intent to defraud.  Therefore, it argues that

the Discovery Rule does not apply to constructive trust claims

under the Third Circuit's reasoning in Island Insteel.[7]

    The Bank is correct that the Court in Island Insteel found

that an infringement of trade name claim is more analogous to a

---

[7]  The other Defendants go further and argue that Island
Insteel held that the Discovery Rule only applies to common law
fraud claims.  The Court disagrees, finding nothing in that case
that limits the Discovery Rule to common law fraud claims.  In
fact, the Virgin Islands Discovery Rule exception applies to
claims based upon a new promise or mistake as well as to fraud
claims.  V.I. Code Ann. tit. 5, § 32(c) (2014).
    The other Defendants further assert that the Supreme Court
has held that the common law definition of fraud (which requires
scienter) applies to the term fraud as used in the Bankruptcy
Code.  Brief of Prosser & Campbell, P.C. (D.I. 117) at 18, citing
Field v. Mans, 516 U.S. 59, 67-68 (1995).  The Field case,
however, dealt with a section of the Code which excepts from
discharge claims based on "actual fraud."  516 U.S. at 67-68; 11
U.S.C. § 523(a)(2)(A).  It cannot be interpreted to mean that the
use of the word "fraud" wherever it is in the Code means actual
fraud.

deceptive trade practices claim than to a common law fraud claim. However, it does <u>not</u> necessarily follow that a constructive fraud claim is more analogous to a deceptive trade practices claim than it is to a common law fraud claim.  For example, the element that the Third Circuit found most analogous in <u>Island Insteel</u> (the imposition of liability on sellers who misrepresent the source of their goods causing harm to consumers) is not at all analogous to the constructive fraud claims at issue here (transfers for which the debtor receives less than a reasonably equivalent value while insolvent).  <u>Id.</u> at 209; V.I. Code Ann., tit. 28, § 171 et seq. (2014).

Rather, like the Court in <u>Tysons Toyota</u>, this Court concludes that a constructive fraud claim is most analogous to a common law fraud claim.  Though the element of scienter is not required in the former, the essence of both claims is that the debtor's property was transferred (for little or inadequate consideration) resulting in harm to the debtor and its creditors. Therefore, the Court concludes that the statute of limitations for fraud (including the Discovery Rule) is applicable to the constructive fraud claims at issue in these adversary proceedings.

### 4.  <u>Commercial Transactions</u>

The Bank also contends that the Discovery Rule should not be applied to routine commercial transactions, such as the payment

of corporate credit card charges involved in the case against it.
See, e.g., Menichini v. Grant, 995 F.2d 1224, 1229-30 (3d Cir.
1993) (holding that '[w]here a party not engaging in fraudulent
concealment asserts the statute of limitations defense, most
courts refused to apply the discovery rule to negotiable
instruments, finding it inimical to UCC policies of finality and
negotiability."); Kuwait Airways Corp. v. Am. Sec. Bank, N.A.,
890 F.2d 456, 461-62 (D.C. Cir. 1989) ("[T]he commercial
circumstances presented do not call for application of the
discovery rule."); Gates Rubber Co. v. USM Corp., 508 F.2d 603,
613 (7th Cir. 1975) (holding that discovery rule did not apply to
commercial transaction because of the "underlying policy
considerations which favor certainty and finality in the conduct
of commercial affairs").

The Trustee responds that the cases cited by the Bank are
distinguishable because they are purely commercial cases,
sounding in contract, not in fraud.

The Court is not persuaded by the Bank's argument that the
Discovery Rule should not be applied simply because the allegedly
fraudulent transfer was done in the context of a commercial
transaction.  The cases cited by the Bank do not support such a
broad exception to the Discovery Rule and are easily
distinguished.  For example, Menichini involved negotiable
instruments which under the UCC have a strong presumption of

22

validity and the need to preserve the finality of such
instruments mandates the strict application of the statute of
limitations. Menichini, 995 F.2d at 1229-30. The Kuwait Airways
case concerned a conversion and breach of contract claim, not a
constructive fraud claim. Kuwait Airways, 890 F.2d at 461.
Finally, the Gates Rubber Court held that the Discovery Rule,
while applicable to a fraudulent concealment claim, was not
applicable to a breach of contract or warranty claim. Gates
Rubber, 508 F.2d at 613. None of these cases is supportive of a
broad doctrine that would preclude application of the Discovery
Rule to constructive fraud claims in the commercial context as
the Bank suggests.

The Bank argues, however, that the Menichini case is
persuasive by analogy because the use of credit cards is just as
critical to commercial transactions these days as are negotiable
instruments like checks. See, e.g., 2010 Federal Reserve
Payments Study at 53, 55 (noting that in 2009 U.S. banking
institutions handled 21.6 billion credit card transactions, of
which 2.4 billion were business card transactions). For the
credit card system to work, banks are required to process the
charges and rely on the cardholder's promise to pay. See, e.g.,
Citicorp Credit Servs., Inc. v. Hinman (In re Hinman), 120 B.R.
1018, 1022 (Bankr. D.N.D. 1990) ("Reliance on the part of the
issuer [bank] is inherent in the system because a card holder in

23

using the credit card forces the issuer to honor its guarantee to the merchant."); Citibank (South Dakota), N.A.  v. Senty (In re Senty), 42 B.R. 456, 460 (Bankr. S.D.N.Y. 1984) (same).

While it is true that credit card use is pervasive in our economy, the Court is not persuaded that credit card transactions have the heightened protection that negotiable instruments have such that they should be exempted from the application of the Discovery Rule to the statute of limitations for such a claim.

The Bank also contends that it did nothing to conceal the transactions which occurred as long as a decade ago and that the Debtor received monthly statements of the charges which it should have contested long ago if it felt they were improper.  See, e.g., Burton v. First Bank of Puerto Rico, 49 V.I. 16, 22 (Super. Ct. 2007) (concluding that the Discovery Rule was not applicable to a claim that the bank failed to credit a deposit because the plaintiff had received monthly bank statements which revealed the failure to credit the deposit).

The Court finds the Burton case to be distinguishable because it was a breach of contract claim, not a constructive fraud claim.  The Court finds no authority to support an exception from the applicability of the Discovery Rule for the claim against the Bank in this proceeding.

5.    <u>Knowledge of Fraud</u>

The Defendants argue that, even if the Discovery Rule is
applicable to the claims against them, the Trustee's argument
under the Discovery Rule must still fail because creditors
(including Comstar) knew, or should reasonably have discovered,
the Debtor's fraudulent activity long before the bankruptcy cases
were filed.  They point to the Debtors' audited financials and
numerous newspaper articles that should have alerted creditors to
the fact that Mr. Prosser was looting the Debtors and having them
pay his personal expenses.

The Defendants rely on the 2001 Consolidated Financial
Statements audited by Grant Thornton.  (Defendant's Statement of
Undisputed Material Facts at Ex. 21.)  Those statements treated
the payment of the credit card charges and other Transfers at
issue in these adversaries as expenses of the Debtors or as part
of the account receivable due from Prosser.  (<u>Id.</u> at Exs. 29 &
30.)  Grant Thornton noted in the audit its objection to the
treatment of the cash advances, loans, and other transfers to
Prosser on the Debtors' financial statements.  (<u>Id.</u> at Ex. 21,
pp. 1-2 & 16-17, Note G.)  After that adverse opinion, the
Debtors hired new auditors, BDO Seidman, for subsequent years.
(<u>Id.</u> at Exs. 25-28.)  In BDO's audits for the years 2002, 2003
and 2004, it reported the significant increases in capital
deficit caused by the continuance of the Debtors' practice of

25

paying Mr. Prosser's expenses and making other transfers to him. (Id. at Ex. 26, p. 17; Ex. 27, p. 18, Note 4(a); Ex. 28, p. 4.) The Defendants argue that based on these audited financials, creditors knew or should have known of the fraudulent transfers at issue. They note specifically that two of the creditors on which the Trustee originally relied for standing under section 544, Greenlight and the RTFC, both admitted that they received copies of the Debtors' audited financial statements during the relevant time. (Id. at Exs. 36, 37, 38, 44 at ¶ 3, & 5 at ¶ 23.) The Defendants argue that all unsecured creditors could have gotten the same information. (Ex. 34, pp. 29 & 43.)

The Defendants also contend that the unsecured creditors, including Comstar, should have known of the existence of the Debtor's fraudulent activity from the numerous newspaper articles about the Debtor and Mr. Prosser. The news articles, reported in the Wall Street Journal and Forbes Magazine as well as the Virgin Islands local papers, highlighted the financial problems of the Debtor and, in particular, the extravagant spending habits of Mr. Prosser using other people's money. (Ex. 51.) The Defendants contend that with such publicity, creditors knew or should reasonably have taken steps to investigate the affairs of the Debtor. If they had done so, they would have learned of the numerous lawsuits against the Debtor and Prosser (including ones by Greenlight in 1998 and the RTFC in 2004 which alleged fraud

26

and breach of fiduciary duty). That would surely have led them to discover the fraudulent transfers at issue. This, the Defendants argue, precludes the Trustee, through Comstar or any other creditor, from using the Discovery Rule to toll the statute of limitations for any claim under section 544.

The Trustee responds that there is no evidence that the eligible creditor on which he relies, Comstar, ever received copies of the Debtors' financial statements. (As a non-public company, the Debtor was not required to publish its financials.) The Trustee further contends that none of the media coverage would have put Comstar on notice of the particular fraudulent transfers at issue in these adversaries. In fact, he notes that the coverage of the Delaware Chancery suit would have had the opposite effect; it would have led a creditor to believe that the Debtor had a higher worth because the Chancery Court held that Debtor's predecessor had been undervalued at the time it was taken private. In re Emerging Commc'ns Inc. S'holders Litig., Civ. A. 16415, 2004 WL 1305745, at *7 (Del. Ch. May 3, 2004).

As evidence in support of his contentions that Comstar did not know or have reason to know of the allegedly fraudulent Transfers at issue, the Trustee relies upon evidence from other adversaries, including deposition and trial transcripts. (Declaration of James P. Carroll.) Those include testimony from Prosser that the Debtors' financial statements were not

publically available.  (Id. at Ex. C; Plaintiff's Amended Statement of Undisputed Facts, ¶ 37.)  They also include testimony and the declaration of William Lunger, the president of Comstar, that Comstar was a small company and, other than an initial inquiry into the Debtors' trade and references in 2001, it did not conduct any investigation of the Debtors' financial affairs and did not know of any of the allegedly fraudulent transfers to or on behalf of Prosser.  (Declaration of James P. Carroll at Exs. M & P.)

The Bank contends that the evidence offered by the Trustee should not be considered because it is inadmissible hearsay and neither the Bank nor the other Defendants had an opportunity to cross examine the witnesses or contest the evidence presented. The Bank argues that "[o]nly evidence admissible at trial shall be considered" in deciding a motion for summary judgment.  Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc., Civ. No. 2003-44, 2005 WL 17970, at *4 (D.V.I. 2005).  See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 n.19 (1970) (concluding that hearsay, an unsworn statement, and the allegations in the complaint are not the type of evidence necessary to support a summary judgment motion under Rule 56(c)); Hazell v. Exec. Airlines, Inc., 181 F. Supp. 2d 444, 449 (D.V.I. 2002) (submission of deposition testimony that included hearsay statements was insufficient evidence to support motion).

28

Rule 56(c) permits a party to "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). All of those materials, however are "materials in the record" of the particular action. In contrast, the evidence which the Trustee offers (through his affidavit) are all materials from another, unrelated adversary in which none of these Defendants was a party.

However, such material may be admissible in a motion for summary judgment. As the Supreme Court stated in <u>Celotex Corp.</u>:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

477 U.S. at 324.

The Trustee argues, however, that the evidence is admissible in these actions. He cites Rule 807 of the Federal Rules of Evidence, which provides:

> (a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
> (1) the statement has equivalent

29

circumstantial guarantees of trustworthiness;
(2) it is offered as evidence of a material
fact;
(3) it is more probative on the point for
which it is offered than any other evidence
that the proponent can obtain through
reasonable efforts; and
(4) admitting it will best serve the purposes
of these rules and the interests of justice.

Fed. R. Evid. 807.

In this case, the Trustee contends that the deposition testimony of Lunger taken in connection with the prior adversary proceeding has guarantees of trustworthiness because it was a statement under oath and he was cross-examined.  In addition, the Trustee notes that the Defendants were aware of the Trustee's reliance on Lunger's testimony and could have deposed him themselves.  The Trustee concludes that the proffered deposition testimony and declaration are probative of Comstar's status, which is a material fact at issue in this case.

The Trustee also argues that the deposition testimony of Lunger is admissible under Rule 804 as the testimony of a witness in prior litigation where a party, with a similar motive to the current Defendants, had an opportunity and incentive to develop contrary evidence on this point.  See Lloyd v. Am. Export Lines, Inc., 580 F.2d 1179, 1184-85 (3d Cir. 1978).  The Trustee contends that the defendants in the prior adversary proceeding had the same motive as the present Defendants to contest the facts relating to Comstar's creditor status and lack of knowledge

of the Debtors' financial condition.

The Court concludes that the proffered testimony of Lunger is admissible under Rules 804 and 807 of the Federal Rules of Evidence.  That testimony, taken under oath and subject to cross examination by others with the same motive as the Defendants to discredit it, has guarantees of trustworthiness and is probative of the facts relating to Comstar's status, which is at issue.  In addition, the Court allowed the parties ample time to take discovery on this issue and the Defendants were afforded the opportunity to depose Lunger or to develop other evidence in response to his prior testimony.  Therefore, the Court will consider that testimony and, as there is nothing to rebut it, concludes that Comstar was not in fact aware of the allegedly fraudulent transfers made by the Debtors to or on behalf of Prosser, including the Transfers at issue here.


IV.  <u>CONCLUSION</u>

As a result of the above findings, the Court concludes that the Trustee has established that there was a creditor, Comstar, with an allowed claim who had standing to bring an action under the Virgin Islands UFCA to avoid the Transfers at issue.  The Court further concludes that because Comstar had no knowledge or reason to believe that the Debtors were engaged in actual or constructive fraud, the Virgin Islands Discovery Rule tolled the

31

the two-year statute of limitations until the filing of the
bankruptcy cases.

For the reasons set forth above, the Court will grant the
Trustee's Motion for Partial Summary Judgment on the issue of the
applicability of the Discovery Rule to the statute of limitations
for constructively fraudulent transfers under Virgin Islands law.

An appropriate Order is attached.


Dated: March 19, 2014                    BY THE COURT:

                                         Mary F. Walrath
                                         United States Bankruptcy Judge